## MARY E. METTE v. HARLOW DOW.

DAMAGES. *On covenant of warranty. Vendee and remote vendor.* A sold an
undivided moiety of a lot to B, his co-tenant, for $4500, making
him a deed with covenant of general warranty; some years after-
wards B sold to C the entire lot for $3000, making a deed with like
covenant; subsequently C was evicted by paramount title, which,
being a trust assignment to secure a debt, did not require an account
of *mesne* profits, and C sued A on his covenant of warranty. *Held,*
that he could only recover one-half of the consideration paid by him
to his immediate vendor, with interest from the date of eviction.

### FROM SHELBY.

Appeal in error from the Circuit Court of Shelby
county. J. O. PIERCE, J.

JARNAGIN & FRAYSER for Mette.

W. M. RANDOLPH for Dow.

COOPER, J., delivered the opinion of the court.

In this agreed case the Circuit Court rendered judg-
ment in favor of Dow against Mette, and the latter
appealed.

On November 17, 1859, Anthony Street conveyed a lot in Memphis to M. J. Wicks in trust to secure two promissory notes described. On May 22, 1862, M. J. Wicks reconveyed the lot by quit-claim deed to Street, although the secured notes had not been paid. On May 28, 1862, Street sold and conveyed the lot to H. H. Potter and H. H. Mette, for the consideration of $11,000 paid, with covenants of seizin, against encumbrance, and of general warranty. On November 25, 1865, Mette, in consideration of $4,500, sold and conveyed his undivided half interest in the land to Potter by deed with like covenants. On October 6, 1868, Harlow Dow filed a bill in chancery against H. H. Potter to recover a debt evidenced by note for $1169.25, and attached the lot upon the ground that Potter had fraudulently disposed, or was about fraudulently to dispose of his property. On March 2, 1869, Potter conveyed the lots to J. M. Portis in trust to secure an alleged debt of $6000 due to Portis. On July 30, 1870, Dow filed an amended bill against Potter and Portis, attacking the trust conveyance from Potter to Portis as fraudulent. On May 15, 1871, the original bill of Dow was dismissed, and the attachment sued out thereon quashed, upon the plea in abatement of Potter, the decree providing that the dismissal should not affect the amended bill, which was retained for further proceedings. On the 23d of August, 1871, Potter was adjudged a bankrupt, the lot being included in the schedule of his effects, and, on April 3, 1872, obtained his discharge in bankruptcy. On October 4, 1871, Dow suggested in his chancery

suit the proceedings in bankruptcy, and amended his bill so as to make the assignee, John Wassell, a party defendant. In February, 1873, Portis and wife reconveyed the property to Potter. On June 21, 1874, Wassell, as assignee, appeared in Dow's suit, and answered his bill, consenting that the suit might proceed to judgment upon condition that he be held free from costs, and that any surplus arising from the sale of the lot over Dow's debt be paid to him. He had previously, on April 2, 1872, sold the lot at a regular bankrupt sale to Potter for $1.50, and made him a deed. On the 14th of January, 1875, a decree was rendered in the case of Dow against Potter and Portis, setting aside the deed to Portis as fraudulent, fixing the amount of Dow's debt against Potter at $1596.08, declaring it a lien on the lot, and ordering the land to be sold in satisfaction thereof unless paid in a given time. On May 7, 1875, an agreement was entered into between Dow and Potter, by which Potter agreed to acquiesce in the decree, and Dow agreed to pay $3008.08 for the lot, and, on the same day, Potter conveyed the lot to Dow for that consideration. On the next day, the lot was sold under the decree and Dow became the purchaser at $1610. The master reported the sale, and added that Dow's decree being for more than his bid after deducting costs and back taxes, Dow proposed to pay the costs and taxes and credit his decree with the residue. The report was confirmed, and title divested out of Potter and Wassell, his assigne, and vested in Dow. The residue of the purchase price as agreed upon by the parties, after de-

ducting the costs, taxes and the recovery, was paid by Dow to Potter. No question arises upon the probate or registration of any of the foregoing instruments. Dow went 'into. possession of the lot at once under his purchase, and continued to hold until evicted as hereinafter mentioned.

On January 31, 1871, one Selby, as the holder of the notes secured by the deed of trust of Street to Wicks of the 17th of November, 1859, filed his bill to subject the lot to the satisfaction of his debt, and such proceedings were had in the cause that a decree was rendered in his favor for the amount due, the land sold in satisfaction thereof, and Dow evicted from the lot on July 10, 1877. The lot was worth at that time $3000. Potter and Mette had joint possession of the lot after their purchase from Street until Mette sold to Potter; then Potter continued in the sole possession until he sold to Dow; and Dow, as we have seen, was thenceforward in possession until evicted under the Selby decree. No rents were claimed by, or allowed to Selby.

Upon these facts, the trial court rendered a judgment in favor of Dow against Mary E. Mette, as the executrix and sole devisee of H. H. Mette, who had died, for $4500, the consideration for his moiety of the lot in the sale to Potter, with interest from July 10, 1877, the date of eviction. The defendant appealed.

· It has been settled in this State, in accord with the current of authority, that the measure of damages for the breach of the covenant of general warranty of

title in a conveyance of land, where there has been no fraud on the part of the seller, is the original consideration, when it can be ascertaincd, or the value of the land at the date of the sale, with interest: *May* v. *Wright*, 1 Tenn., 385; *Talbot* v. *Bedford*, Cooke, 447; *Elliott* v, *Thompson*, 4 Hum., 99; *Shaw* v. *Wilkins*, 8 Hum., 647.    And, as the covenant runs with the land, any subsequent vendee who is evicted, may . sue for the breach: *Hopkins* v. *Lane*, 9 Yer., 79; *Kenney* v. *Norton*, 10 Heis., 384.    But where the cases speak of the. measure of damages being the consideration money or the value of the land, they mean, says Mr. Rawle, that this is the extent to which damages can be recovered upon the covenant under any circumstances: Rawle on Cov., p., 331, 3d ed.    Within this limit, there are rules which diminish the recovery to a lower sum.    Interest, for example, is allowed to counter-balance the *mesne* profits which the owner of the paramount title may recover.    If, therefore, the statute of limitations prevent a recovery of *mesne* profits for more than a certain number of years, interest will not be allowed for any longer time: *Caulkins* v. *Harris*, 9 Johns., 324; *Cox* v. *Henry*, 32 Penn. St., 19.    So, if. the recovery of *mesne* profits is limited by the' date of the accrual of the paramount title, as where it is held under a patent from the State: *Kyle* v. *Fauntleroy*, 9 B. Men., 620.    So, where the eviction is *pro tanto* by the payment of a judgment which is an incumbrance : *Kenney* v. *Norton*, 10 Heis., 388; *Austin* v. *McKinney*, 5 Lea, 488.    So, where there is no recovery of *mesne* profits for a cer-

tain period by reason of a life estate in the vendor:
*Crittenden* v. *Posey,* 1 Head, 312. So, as in the
case before us, upon the same principle, where by rea-
son of the character of the paramount title, the *mesne*
profits are not needed, or not allowed to the claim-
ant. The trial judge did not err, therefore, in refus-
ing to allow interest on the recovery except from the
date of the plaintiff's eviction.

The consideration of Mette's sale to Potter for his
moiety of the land was $4500. The consideration of
Potter's sale of the whole lot to Dow was only
$3008.08 at the utmost. And the first question which
arises on this state of facts is, whether Dow is en-
titled to recover from Mette's estate the whole of the
original consideration of the conveyance from Mette to
Potter, or only the one-half of the consideration paid
by Dow to Potter for the entire lot? If the trial
judge was correct in giving the former sum, it is clear
that Dow will be largely more than re-imbursed for his
own outlay for the property, and will recover more
than he would be entitled to in a direct action against
his immediate vendor upon the covenant of warranty
in his deed. The result is somewhat startling, and
should be sustained, both by reason and authority, to
commend itself to our sense of justice.

The argument submitted in its favor is that the
covenant sued on admits of the measure of damages
claimed, if sued upon by the original grantee, and that
the plaintiff, as assignee of the covenant, must neces-
sarily be entitled to the same recovery. The measure
of damages, as between the original parties, is un-

doubtedly the consideration, with interest. But, as we have seen, this is the full extent to which damages can be recovered under any circumstances. It does not follow that the full measure of damages shall be recovered in every case. On the contrary, as we have also seen, the damages may be cut down so far as the interest is concerned, whenever, upon the principle that interest is in lieu of *mesne* profits, the plaintiff has not been compelled to account for *mesne* profits. Strictly, the plaintiff is entitled, as held by the supreme court of Massachusetts, to recover the whole amount, subject to a deduction of the *mesne* profits received by him for which he was not held to account to the paramount owner: *Whiting* v. *Dewey*, 15 Pick., 428. Inasmuch, however, as the law, by a presumption which is not allowed to be disputed, treats the profits as equivalent to the interest, the limitation of the recovery of interest to the period for which the *mesne* profits are rendered, reaches precisely the same result: Rawle on Cov., 93, 3d ed.; *Guthrie* v. *Pagsley*, 12 Johns., 126; *Spring* v. *Chase*, 22 Maine, 502; *Patterson* v. *Stewart*, 6 W. & S., 528; *Rich* v. *Johnson*, 1 Chand., 20.

If, now, the measure of damages may be cut down by a deduction of the interest when necessary to attain the ends of justice, no reason occurs why a deduction of the principal may not also be made in a proper case. The covenant is a peculiar one, and not like an ordinary covenant for so much money. It is rather in the nature of a bond with a fixed sum as a penalty, the recovery on which will be satisfied by

the payment of the actual damages.  Each vendor, subject to this rule, may be treated as the principal obligor to his immediate vendee, and as the surety of any subsequent vendee to hold him harmless by reason of the failure of title, and the ultimate vendee, when evicted, is entitled to be subrogated to the rights of his immediate vendor against a remote vendor to the extent necessary to indemnify him.  Such a vendee, to use the language of the supreme court of North Carolina, sues a remote vendor on the covenant to re-dress his, the plaintiff's, own injuries, not the injuries of the immediate vendee of such remote vendor.  Accordingly, that court held, in a case like the one before us, that the measure of damages was the consideration paid by the plaintiff to his immediate vendor with interest, and not the consideration paid by such vendor to the defendant.  In other words, the damages recovered were limited to the actual injury sustained: *Williams* v. *Beeman*, 4 Dev., 483.

The industry of counsel has found some *dicta* in cases not involving the question, but no direct authority in conflict with this decision.  The case of *Lawrence* v. *Robertson*, 10 Rich., turns upon the wording of a statute.  In *Hopkins* v. *Lane*, 9 Yer., 79, the facts, as given by the Reporter, show a sale and conveyance of land by Hopkins to Cox for $2328, and a sale and conveyance of the land on the same day to the plaintiff Lane for $1700.  The recovery is stated to have been for the former sum with interest. It does not appear why there was such a difference in the consideration of the two conveyances executed

on the same day, and it is certain that no argument
was submitted, nor ruling made by the court on the
point thereby raised, and now under consideration. On
the other hand, in the recent case of *Aiken* v. *Suttle*,
4 Lea, 103, 133, the principle settled tends to sustain
the North Carolina decision. There, a married woman
had filed a bill to recover land which had been sold
under a power of attorney executed by. her in connec-
tion with her husband, and subsequently resold several
times. The sale was held to be void as to the mar-
.ried woman, and her right to the land declared, to be
enjoyed in possession at the death of her husband.
But it was also held that she should account to the
then holder of the land for the purchase money re-
ceived and appropriated by her, with interest, to the
extent necessary to re-imburse such holder the purchase
money paid by him to his immediate vendor, with
interest from the death of the husband. This, it was
said, is, in legal contemplation, indemnity for the loss
of the land, since it is all he, the holder, could re-
cover from his vendor if he had a warranty of title.
"This limitation," it was added, "may seem to ope-
rate somewhat arbitrarily, and it may sometimes per-
mit the reclaimant to retain some of the consideration
received for the land reclaimed, but, upon the whole,
it appears to be equitable, and it is based upon an
obvious analogy." The analogy referred to was, in the
view of the learned special judge who delivered the opin-
ion of the court, precisely that of a recovery upon a
warranty of title to land, citing *Elliott* v. *Thompson*, 4
Hum., 99, but without having in his mind the state

of facts now before us.   It is only the principle an-
nounced, therefore, and not the *dictum* in the illustra-
tion which can aid us in the present case.   The prin-
ciple is in point.

The great difficulty in regulating the damages on the
covenant of warranty of title, was in finding some meas-
ure which would indemnify the purchaser without bearing
too heavily on the vendor.   In this country, where lands,
as a rule, were enhancing in value and being rapidly
improved, it was found, that to give the value of the
land at the time of eviction, the only mode of secur-
ing full indemnity, would be ruinous to the vendor,
and often make him liable for an amount which the
parties could not have contemplated at the time of
the contract.   The measure of damages adopted, it was
thought, would more nearly meet the difficulties of the
subject than any other.   Indemnity was, however, all
that any vendee could reasonably ask, and if this
could be obtained by a recovery within the limit of
the measure adopted, it is clear that the ends of jus-
tice would be met.   The recovery in this case, should,
therefore, be cut down to the one-half of the purchase
money paid by the plaintiff for the lot, with interest.

The learned counsel of the appellee insists that the
recovery should be cut down still further, his argu-
ment being based upon the title acquired by the ap-
pellee, according to his view of the facts, and the
effect of the proceedings in bankruptcy.   But the lien
of the appellee was prior and superior to that of the
assignee in bankruptcy.   For, although his original
bill was discussed, the so-called amended bill, which

was in reality a supplemental bill based upon the new fact of the fraudulent conveyance by Potter to Portis, was retained, and the lien thereby acquired also ante-dated the proceedings in bankruptcy. No attachment was necessary: Code, sec. 4288; *August* v. *Seeskind,* 6 Cold., 166, 172. Besides, the conveyance to Portis was good as between the parties, and the title thus acquired has never been sought to be set aside by the assignee. His re-conveyance to Potter after his discharge in bankruptcy, again clothed the latter with the original title, and his conveyance to Dow would carry the covenant of warranty.

The agreed facts do not show that the profit on city script in which the taxes were paid, diminished the consideration actually paid for the land by Dow. And the fact that the U. S. currency, in which Potter paid Mette the price of his moiety of the land, was worth at the time only fifty cents in gold, if it ever could have cut any figure in the case, has ceased to be of importance by reason of the conclusion reached as to the measures of recovery.

The judgment below will be reversed, and a judgment rendered here in accordance with this opinion.